AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
District of Puerto Rico

25-MJ-3285-GOODMAN

| United States of America | ) |
|---|---|
| v. | ) Case No. 25-284 (RAM) |
| JUAN CARLOS REYNOSO | ) |
| | ) |
| | ) |
| _____ | ) |
| Defendant | |

FILED BY ___BM___ D.C.

Jul 1, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   JUAN CARLOS REYNOSO,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:
In violation of 18 U.S.C. §§ 1343 (wire fraud); 1349 and 1956(h).

Date: 06/25/2025
_____
*Issuing officer's signature*

City and state:   San Juan, Puerto Rico
USMJ Hector L. Ramos-Vega
*Printed name and title*

### Return

| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
| at *(city and state)* _____ . |

Date: _____
_____
*Arresting officer's signature*

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>[1] MICHAEL SHANNON SIMS,<br>Counts: [1, 2]<br>[2] JUAN CARLOS REYNOSO,<br>Counts: [1, 2]<br><br>Defendants. | INDICTMENT<br><br>CRIMINAL NO. 25-284 (RAM)<br><br>CRIMINAL VIOLATIONS:<br>[18 U.S.C. §§ 1349, 1956(h)]<br><br>[TWO COUNTS] |

25-MJ-3285-GOODMAN

### INDICTMENT

**THE GRAND JURY CHARGES:**

At relevant times material to this Indictment:

### GENERAL ALLEGATIONS

#### Relevant Individuals and Entities

1. OmegaPro was an unincorporated entity offering investment packages related to foreign exchange ("forex") investment using a multi-level marketing ("MLM") sales structure. An MLM structure, also known as a pyramid structure, involves salespeople promoting a product or service through their social network and encouraging members of their sales network to do the same. Forex investment refers to exchanging the currency of one country for the currency of another with the aim of making a profit. OmegaPro purportedly conducted its business through a variety of corporate shell entities, including Omega World Ltd. (British Virgin Islands), OmegaPro Ltd. (Saint Vincent & the Grenadines), OmegaPro Services, Ltd., OMP Money Ltd. (United Kingdom), OMP Exchange (Singapore), as well as through a network of individuals.

Page 1 of 13

2. **[1] MICHAEL SHANNON SIMS** was a United States citizen residing in Georgia and Florida, and was a founder, strategic consultant, and promoter of OmegaPro.

3. **[2] JUAN CARLOS REYNOSO** was a dual citizen of the United States and Peru residing in New Jersey and Florida, and was the OmegaPro Manager for Latin America.

4. **CC-1** was a Swedish citizen residing in the United Arab Emirates and was the Chief Executive Officer of OmegaPro.

5. **CC-2** was a German citizen residing in the United Arab Emirates and was the Chief Network Officer for OmegaPro.

**Overview of the OmegaPro Wire Fraud and Money Laundering Conspiracies**

6. From in or about December 2018, to at least in or about April 2025, **[1] SIMS, [2] REYNOSO, CC-1,** and **CC-2**, conspired with each other and with others known and unknown to the grand jury to promote and operate OmegaPro, an MLM scheme that sought to obtain money or property by means of false or fraudulent pretenses, including by falsely promising victims an extraordinary return on investment for purchasing OmegaPro forex investment packages.

7. **[1] SIMS, [2] REYNOSO, CC-1, CC-2**, and others known and unknown to the grand jury, solicited investors by falsely representing to victim-investors, or causing others to represent to victims, that, among other things: (a) OmegaPro had experienced, vetted, financial professionals conducting forex trading with OmegaPro's victims' funds; (b) through such forex trading, investments would earn a 300% return after 16 months; and (c) following a purported network intrusion or "hack" of OmegaPro's platform in or about November 2022, that the balance of victims' OmegaPro accounts would be transferred to an alternative and secure platform known as Broker Group Ltd. ("Broker Group"), where victims would have access to their funds.

Investors were instructed to purchase OmegaPro forex packages using virtual currency, and through these and other misrepresentations, OmegaPro raised over $650 million in virtual currency from thousands of investors.

8. Contrary to OmegaPro's representations to victims that their funds would be used to conduct forex trading, OmegaPro used new victim funds to grow the fraud scheme and to pay out insiders. Between in or about August 2019, and in or about April 2025, [1] **SIMS**, [2] **REYNOSO, CC-1, CC-2**, and others known and unknown to the grand jury, distributed the proceeds among the co-conspirators and laundered proceeds obtained from the OmegaPro fraud scheme to conceal their source. At the same time, victims have been unable to access their funds even after OmegaPro claimed to have transferred them to Broker Group, resulting in many millions of dollars in victim losses.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)
### 18 U.S.C. § 1349

9. The allegations contained in Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated herein as if fully set forth in this paragraph.

10. From in or about December 2018, to in or about April 2025, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

[1] **MICHAEL SHANNON SIMS,** and
[2] **JUAN CARLOS REYNOSO,**

the defendants herein, did knowingly and intentionally combine, conspire, and agree with each other and other individuals, known and unknown, to commit wire fraud, namely to knowingly, and with the intent to defraud, devise, intend to devise, and participate in a scheme and artifice to defraud and to obtain money and property from another person by means of materially false and

fraudulent pretenses, representations, and promises, and did transmit and cause to be transmitted by means of interstate wire, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

11. The purpose of the conspiracy was for the defendants, and others known and unknown to the grand jury, to: (a) unlawfully enrich themselves by obtaining money or property from victims by means of false or fraudulent pretenses through the promotion and operation of OmegaPro, including by making knowing and intentional misrepresentations about, among other things, the prospect of lucrative returns, the safety of investments in OmegaPro, the purpose for which victim funds would be used, and OmegaPro's use of established and expert traders; (b) distribute proceeds of the conspiracy among the defendants and other co-conspirators; and (c) conceal the conspiracy.

## MANNER AND MEANS OF THE CONSPIRACY

12. Starting no later than in or about January 2019, **[1] SIMS, CC-1, CC-2**, and others known and unknown to the grand jury, established OmegaPro as an MLM scheme purporting to sell forex investment packages to victims that would generate 300% returns over a period of 16 months using forex trading. By no later than in or around April 2019, **[2] REYNOSO** joined OmegaPro to lead Latin American operations.

13. To solicit investors in OmegaPro, **[1] SIMS, [2] REYNOSO**, CC-1, CC-2, and others known and unknown to the grand jury, made and caused to be made a variety of false and misleading claims concerning OmegaPro's investment packages. For example:

a. **[1] SIMS, [2] REYNOSO, CC-1, CC-2**, and others known and unknown to the grand jury, falsely represented to OmegaPro victims that the funds victims used to purchase OmegaPro investment packages were invested in forex trading. In fact, a large portion of the funds raised from victims was distributed to OmegaPro's leadership, including **[1] SIMS, [2] REYNOSO, CC-1**, and **CC-2**, for self-enrichment, including for non-OmegaPro-related business ventures, travel, luxury purchases, and entertainment.

b. **[1] SIMS** misled victims by vouching for OmegaPro's trading performance and the skills of the hired traders and falsely advertising the safety of investment in OmegaPro.

c. **[2] REYNOSO** both falsely and misleadingly represented in a variety of presentations to promoters that OmegaPro was operating pursuant to a legitimate license and at other times falsely and misleadingly represented that OmegaPro was not subject to any country's legal rules.

d. **CC-1, CC-2**, and others known and unknown to the grand jury, falsely represented, or caused others to represent, to victims that their investment packages would yield a 300% return based on the expected performance of elite traders.

14. To set up and promote OmegaPro, the co-conspirators used their knowledge, experience, and methods from their previous involvement in other collapsed MLM schemes that similarly promised high returns, but left investors unable to withdraw funds and with millions of dollars in losses. For example, **CC-1** and **CC-2** had been involved in OneCoin, which collapsed no later than in or around 2017 and **[2] REYNOSO** had promoted IcomTech, which collapsed no later than in or around late 2019. The OmegaPro promotional efforts included the following:

a. **[1] SIMS, [2] REYNOSO, CC-1, CC-2,** and others known and unknown to the grand jury, created and promoted OmegaPro marketing materials describing the purported forex investment packages and outlining the MLM structure. These promotional materials encouraged investors in OmegaPro to become OmegaPro promoters by referring individuals to invest in the scheme and earning commissions for these investments. Promoters could then create their own chain of investors and lower-level promoters for which the top-level promoters would earn commissions. These promotional presentations were broadcast on a variety of online social media and video platforms in an effort to build out and promote OmegaPro's MLM structure.

b. **[1] SIMS, [2] REYNOSO, CC-1, CC-2,** and others known and unknown to the grand jury, would use social media to display their luxurious vacations, designer clothes and watches, and expensive cars in order to motivate promoters to join OmegaPro and create the appearance of legitimate financial success.

c. **[1] SIMS, [2] REYNOSO, CC-1,** and **CC-2** hosted lavish OmegaPro promotional events and trainings all over the world to audiences of thousands of people aimed to convince existing and prospective promoters that OmegaPro offered a path to wealth and a luxurious lifestyle. For example, at an event in Dubai, OmegaPro projected its logo onto the Burj Khalifa, the world's tallest building.

15. **[1] SIMS, [2] REYNOSO, CC-1, CC-2,** and others known and unknown to the grand jury, induced victims to keep their funds in OmegaPro, by representing to them, or causing others to represent to them, that they would incur large fees to withdraw their funds from their OmegaPro accounts.

16. After OmegaPro had recruited thousands of victims, OmegaPro announced that it had suffered a network intrusion or "hack" in or about November 2022. No later than January 2023, **[2] REYNOSO, CC-1, CC-2**, and others known and unknown to the grand jury, told victims through email and other means, that their investments were secure and that OmegaPro was transferring their investments to Broker Group. Notwithstanding these representations, victims were unable to withdraw money from either their OmegaPro accounts or their accounts at Broker Group and have been unable to do so to the date of this Indictment.

17. Through the co-conspirators' fraudulent scheme, OmegaPro raised funds from victims all over the world, including victims in the United States. Specifically, in his role managing OmegaPro's Latin American operations, **[2] REYNOSO** oversaw promoter networks in Puerto Rico that included over a hundred U.S. victims.

18. The virtual currencies used by OmegaPro victims and promoters to purchase OmegaPro investment packages were transmitted to virtual currency wallet addresses controlled by OmegaPro executives, including **CC-1** and **CC-2** (the "OmegaPro Wallets"). Between in or about August 2019, and in or about November 2022, the equivalent of over approximately $650 million dollars in virtual currency was transferred into the OmegaPro Wallets.

19. **[1] SIMS, [2] REYNOSO, CC-1, CC-2**, and others known and unknown to the grand jury, concealed the manner in which the conspiracy was executed by, among other things, transferring victim funds to OmegaPro insiders and high-ranking promoters and further dispersing the funds in order to obscure their origins. For example:

   a. Between in or about October 2020, and in or about October 2022, the OmegaPro Wallets transferred at least approximately $5 million in victim funds to a virtual

currency account belonging to **[1] SIMS**. From that account **[1] SIMS** further dispersed the virtual currency to other virtual currency accounts.

      b.    Between in or about May 2021, and in or about December 2022, the OmegaPro Wallets transferred at least approximately $11 million in victim funds to a virtual currency account belonging to **[2] REYNOSO**. From that account **[2] REYNOSO** further dispersed the virtual currency to other virtual currency accounts.

      c.    Between in or about May 2020, and in or about November 2021, the OmegaPro Wallets transferred at least approximately $10.1 million in victim funds to a virtual currency account belonging to **CC-1**. From that account **CC-1** further dispersed the virtual currency to other virtual currency accounts.

      d.    Between in or about January 2021, and in or about April 2022, the OmegaPro Wallets transferred at least approximately $111 million in victim funds to a virtual currency account belonging to **CC-2**. From that account, **CC-2** further dispersed the virtual currency to other virtual currency accounts.

20.    **[1] SIMS, [2] REYNOSO, CC-1, CC-2**, and others known and unknown to the grand jury, engaged in the promotion of OmegaPro in Puerto Rico through online video platforms and other means, and caused the transmission of victim funds to cryptocurrency wallets associated with OmegaPro, including through interstate wire communications to and from the District of Puerto Rico.

All in violation of Title 18, United States Code, Section 1349.

**COUNT TWO**
**(Conspiracy to Commit Money Laundering)**
**18 U.S.C. § 1956(h)**

21. The allegations contained in Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated as if fully set forth in this paragraph.

22. From no later than in or about August 2019, to at least in or about April 2025, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

**[1] MICHAEL SHANNON SIMS, and**
**[2] JUAN CARLOS REYNOSO,**

the defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree with each other and others known and unknown to the grand jury to conduct and attempt to conduct a financial transaction, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and did in fact involve the proceeds of specified unlawful activity, to wit, violations of Title 18, United States Code, Section 1343, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(l)(B)(i).

## PURPOSE OF THE CONSPIRACY

23. It was the purpose of the conspiracy for the defendants and others known and unknown to the grand jury to launder the proceeds of the fraud scheme alleged in Count One for the purpose of concealing and disguising the nature, location, source, ownership, and control of the proceeds.

## MANNER AND MEANS OF THE CONSPIRACY

24. The allegations contained in Paragraphs 12 through 20 of this Indictment are re-alleged and incorporated as if fully set forth in this paragraph.

All in violation of Title 18, United States Code, Section 1956(h).

Page **9** of **13**

## Forfeiture Notice

## Fraud Forfeiture Allegations

25. The allegations contained in Paragraphs 1 through 20 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

26. The United States hereby gives notice to **[1] SIMS** and **[2] REYNOSO** that, upon conviction of the offenses charged in Count 1 of this Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violation of Title 18, United States Code, Sections 1349 alleged in this Indictment.

27. The property to be forfeited includes but is not limited to:

   a. Approximately 119.65 Bitcoin located in root address bc1qd02m2fgh82dcefymtpq3mxxqvydz29rfcgdgac on or about January 31, 2025, and subject to a seizure order.

   b. Approximately 64,223.34951124 USDT and approximately 10.14374610 ETH held in Binance account 838344144 and seized on or about February 26, 2025.

   c. Approximately 238,380.970424 USDT-ETH held in wallet address 0x034D916250bED28F22d994E114E0953aab2ebF3F and approximately 45,866 USDT-Tron held in wallet address TGy4yscPazLqxM9yqW2Ajk8t4HqS7oy6ux seized on or about February 26, 2025.

        d.        Approximately 24,682.49 USDT held in Binance account 25738938 and approximately 337,597.55760712 USDT held in Binance account 48953866 seized on or about March 25, 2025.

28.        If any of the property described above, as a result of any act or omission of the defendant (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

## Money Laundering Forfeiture Allegations

29.        The allegations contained in Paragraphs 1 through 8 and in Paragraphs 12 through 24 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

30.        The United States hereby gives notice to **[1] SIMS** and **[2] REYNOSO** that, upon conviction of the offenses charged in Count 2 of this Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(1), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violation of Title 18, United States Code, Section 1956(h) alleged in this Indictment.

31.        The property to be forfeited includes but is not limited to:

    a.  Approximately 119.65 Bitcoin located in root address bc1qd02m2fgh82dcefymtpq3mxxqvydz29rfcgdgac on or about January 31, 2025, and subject to a seizure order.

    b.  Approximately 64,223.34951124 USDT and approximately 10.14374610 ETH held in Binance account 838344144 and seized on or about February 26, 2025.

    c.  Approximately 238,380.970424 USDT-ETH held in wallet address 0x034D916250bED28F22d994E114E0953aab2ebF3F and approximately 45,866 USDT-Tron held in wallet address TGy4yscPazLqxM9yqW2Ajk8t4HqS7oy6ux seized on or about February 26, 2025.

    d.  Approximately 24,682.49 USDT held in Binance account 25738938 and approximately 337,597.55760712 USDT held in Binance account 48953866 seized on or about March 25, 2025.

  32.  If any of the property described above, as a result of any act or omission of the defendant (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

DATED: June 25, 2025, at San Juan, Puerto Rico.



TRUE BILL

FOREPERSON

Date: June 25, 2025

W. STEPHEN MULDROW
UNITED STATES ATTORNEY

LORINDA I. LARYEA
ACTING CHIEF, FRAUD SECTION

JOHN LYNCH
CHIEF, COMPUTER CRIME AND INTELLECTUAL PROPERTY SECTION

Jonathan Gottfried
Assistant U.S. Attorney

Ariel Glasner
Trial Attorney, Criminal Division
Department of Justice

Tamara Livshiz
Trial Attorney, Criminal Division
Department of Justice